IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

```
LARRY LYDELL BELL, SR.,          )
                                 )    Civil No. 04-1784-MO
            Petitioner,          )
                                 )
      v.                         )
                                 )
GUY HALL,                        )
                                 )    OPINION AND ORDER
            Respondent.          )
```

Thomas J. Hester
Assistant Federal Public Defender
101 S.W. Main Street, Suite 1700
Portland, Oregon 97204

      Attorney for Petitioner

Hardy Myers
Attorney General
Douglas Y.S. Park
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon 97310

      Attorneys for Respondent

///

1 - OPINION AND ORDER

MOSMAN, District Judge.

Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2254 in which he seeks to challenge the constitutionality of his underlying state conviction for Arson in the First Degree.  For the reasons set forth below, the Petition for Writ of Habeas Corpus (#2) is granted.

<u>**BACKGROUND**</u>

Petitioner checked into Mel's Motor Inn at approximately 5:30 a.m. on Sunday, March 7, 1999.  Respondent's Exhibit 103, p. 98.  When he was asked to leave his room at the appointed checkout time, he became angry and the police were ultimately summoned by the motel's owners.  <u>Id</u> at 73-74.  Two police officers arrived on the scene, and advised petitioner that he was required to leave the motel.  <u>Id</u> at 86-87.  The officers gave petitioner permission to retrieve his coat from his room, which took him approximately one minute.  <u>Id</u> at 87.

Shortly after petitioner's departure, the motel owners' son, Jatin Patel, entered petitioner's room and saw smoke.  Petitioner had piled his sheets, pillows, and comforter on the floor and set them on fire.  <u>Id</u> at 55.  The flames were approximately two to three feet high, and Patel was able to quickly extinguish the fire with a pillow.  <u>Id</u> at 55-57.  The fire destroyed the bedding, and also damaged the carpet and sub-flooring.  <u>Id</u> at 58-60, 106.  The total cost of the damage amounted to $175.  <u>Id</u> at 119.

Petitioner was arrested and charged by indictment with three counts of Arson in the First Degree on the following theories:

Count One:      intentionally damaging protected property[1] by starting a fire (ORS 164.325(1)(a));

Count Two:      intentionally damaging property by starting a fire and recklessly placing protected property in danger of damage (ORS 164.325(1)(b)); and

Count Three:    intentionally damaging property by starting a fire and recklessly placing another person in danger of physical injury (ORS 164.325(1)(b)).

The jury convicted petitioner of the lesser included offense of Reckless Burning on Count One, but convicted him of Arson in the First Degree on Counts Two and Three. The trial court merged Count One with Counts Two and Three, but found that Counts Two and Three should not be merged. The court found petitioner to be a Dangerous Offender pursuant to ORS 161.725 and sentenced him to 360 months imprisonment on Count Two, and imposed an upward departure sentence of 240 months on Count Three based on the fact that petitioner was on supervision at the time of his crimes. Respondent's Exhibit 103, p. 381-82. The court imposed these sentences consecutively, resulting in a term of imprisonment totaling 50 years.

Petitioner directly appealed his convictions and sentence, and the State conceded that the trial court erred when it failed to merge all of his convictions. Respondent's Exhibit 109, pp. 8-9.

---

[1] Oregon defines "protected property" as "any structure, place or thing customarily occupied by people. . . ." ORS 164.305(1).

3 - OPINION AND ORDER

The Oregon Court of Appeals agreed that the trial court should have merged all three counts, but denied relief on petitioner's remaining claims.  Respondent's Exhibit 111.  The Oregon Supreme Court denied review.  Respondent's Exhibits 113.

The case was remanded for resentencing where the court declined to impose a 30-year Dangerous Offender sentence out of constitutional concerns arising out of the Supreme Court's decision in Apprendi v. New Jersey, 530 U.S. 466, 490 (2000).[2]  Respondent's Exhibit 105, pp. 41-43.  It did, however, upwardly depart to 240 months from the presumptive sentencing range of 116-120 months for two reasons: (1) petitioner was on probation at the time of the offense; and (2) petitioner met the criteria for a Dangerous Offender under ORS 161.725.  Id at 42.  Petitioner once again appealed, but the Oregon Court of Appeals affirmed the lower court without opinion, and the Oregon Supreme Court denied review.  Respondent's Exhibits 126, 130.

On June 24, 2004, the Supreme Court decided Blakely v. Washington, 542 U.S. 296 (2004), a case which applied directly to an Apprendi claim petitioner had raised during his second direct appeal.  The Oregon Court of Appeals filed its decision 15 days before Blakely was decided, and petitioner filed his Petition for Review in the Oregon Supreme Court two days before the Blakely

---

[2]  The Supreme Court decided Apprendi on June 26, 2000, more than one month after petitioner's original sentencing on May 8, 2000.

decision.  Petitioner subsequently filed several motions asking the Oregon Court of Appeals to reconsider or vacate its decision in light of Blakely, but those requests were denied.  Respondent's Exhibits 123-124, 127-129.  The Appellate Judgment became effective on March 17, 2005.  Respondent's Exhibit 130.

On December 7, 2004, petitioner filed his federal Petition for Writ of Habeas Corpus.  Respondent asks the court to deny relief on the Petition because many of petitioner's claims fail to state a claim, others are procedurally defaulted, and all claims lack merit.

### DISCUSSION

**I.    Unargued Claims.**

There are a number of claims in the *pro se* Petition which respondent addressed in his Response, but which petitioner has not supported with any briefing.  The court deems these claims abandoned.  Cf. Doty v. County of Lassen, 37 F.3d 540, 548 (9th Cir. 1994) ("[t]he failure to brief [an] issue waives [the appellant's] right to appeal" it).

Petitioner's remaining claims consist of the following:

1.    The trial court violated petitioner's constitutional right to be free from double jeopardy when it: (a) denied his pretrial motion to merge the multiplicitous charges; and (b) received the jury's verdicts on the multiplicitous counts after the jury had acquitted petitioner of Count One;

2.    The trial court violated petitioner's Sixth Amendment right to a jury trial by imposing an upward departure sentence without the jury having found the requisite aggravating factors; and

5 - OPINION AND ORDER

3.    Trial counsel was constitutionally ineffective when he failed to object to the trial judge's constructive amendment of the charges against him so as to eliminate the requirement that the jury find, in Counts Two and Three, that petitioner intentionally set fire to a dwelling.

Respondent asks the court to deny relief on Grounds One and Two on the merits, and asserts that Ground Three is procedurally defaulted.

## II.  <u>**Exhaustion and Procedural Default**</u>.

A habeas petitioner must exhaust his claims by fairly presenting them to the state's highest court, either through a direct appeal or collateral proceedings, before a federal court will consider the merits of those claims. <u>Rose v. Lundy</u>, 455 U.S. 509, 519 (1982).  "As a general rule, a petitioner satisfies the exhaustion requirement by fairly presenting the federal claim to the appropriate state courts . . . in the manner required by the state courts, thereby 'affording the state courts a meaningful opportunity to consider allegations of legal error.'"  <u>Casey v. Moore</u> 386 F.3d 896, 915-916 (9th Cir. 2004) (quoting <u>Vasquez v. Hillery</u>, 474 U.S. 254, 257, (1986)).  If a habeas litigant failed to present his claims to the state courts in a procedural context in which the merits of his claims could have been considered, the claims have not been fairly presented to the state courts and are therefore not eligible for federal habeas corpus review. <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989).

6 - OPINION AND ORDER

A petitioner is deemed to have "procedurally defaulted" his claim if he failed to comply with a state procedural rule, or failed to raise the claim at the state level at all. Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Coleman v. Thompson, 501 U.S. 722, 750 (1991). If a petitioner has procedurally defaulted a claim in state court, a federal court will not review the claim unless the petitioner shows "cause and prejudice" for the failure to present the constitutional issue to the state court, or makes a colorable showing of actual innocence. Gray v. Netherland, 518 U.S. 152, 162 (1996); Sawyer v. Whitley, 505 U.S. 333, 337 (1992); Murray v. Carrier, 477 U.S. 478, 485 (1986).

In this case, petitioner asserts that he fairly presented his Ground Three ineffective assistance of counsel claim during direct review. However, Oregon law dictates that "claims of inadequate assistance of counsel may not be raised on direct appeal." State v. Dell, 156 Or.App. 184, 188, 967 P.2d 507, rev. denied, 328 Or. 194, 977 P.2d 1172 (1998). Even if petitioner could have raised an ineffective assistance of counsel claim during direct review, he failed to do so during his first direct appeal where his convictions were affirmed by the Oregon Court of Appeals. See Respondent's Exhibits 107, 108, 110, 112. To the extent he could have presented his Ground Three claim during his second direct appeal in which he could only challenge the validity of his sentence, petitioner failed

to include the claim in his Petition for Review to the Oregon Supreme Court.  <u>See</u> Respondent's Exhibit 122.

For these reasons, petitioner failed to fairly present his Ground Three claim to Oregon's state courts.  Because the time for doing so passed long ago, the claim is procedurally defaulted. Petitioner has not established cause and prejudice, or made a colorable showing of actual innocence sufficient to excuse his default.

**III. <u>The Merits</u>.**

    **A.   <u>Standard of Review</u>.**

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  A state court's findings of fact are presumed correct, and petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are

materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Id</u> at 413. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. <u>Id</u> at 410. The state court's application of clearly established law must be objectively unreasonable. <u>Id</u> at 409.

When a state court reaches a decision on the merits but provides no reasoning to support its conclusion, the federal habeas court must conduct an independent review of the record to determine whether the state court clearly erred in its application of Supreme Court law. <u>Delgado v. Lewis</u>, 223 F.3d 976, 982 (9th Cir. 2000). In such an instance, although the court independently reviews the record, it still defers to the state court's ultimate decision. <u>Pirtle v. Morgan</u>, 313 F.3d 1160, 1167 (9th Cir. 2002).

    **B.**   <u>**Analysis**</u>**.**

        1.   <u>Ground One: Double Jeopardy</u>.

Petitioner asserts that the trial court violated his constitutional right to be free from double jeopardy in two related particulars: (1) it should have granted his pretrial motion to merge

the multiplicitous counts in the indictment; and (2) it should not have received the jury's verdicts on the multiplicitous counts after the jury had reached its decision on Count One.

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const., Amdt. 5. The "central purpose of the Double Jeopardy Clause [is] to protect [a defendant] against vexatious multiple prosecutions." <u>United States v. Wilson</u>, 420 U.S. 332, 343 (1975). "An indictment is multiplicitous when it charges multiple counts for a single offense, producing two penalties for one crime and thus raising double jeopardy questions." <u>United States v. Stewart</u>, 420 F.3d 1007, 1012 (9th Cir. 2005).

In this case, petitioner asserts that he suffered from a multiplicitous indictment in his case because his single crime was divided into more than one count. He argues that he was twice put in jeopardy for Arson in the First Degree because the jury acquitted him of that charge in Count One of the indictment, and Count One did not contain any unique elements not repeated in Counts Two and Three. He therefore concludes that once the jury convicted him only of the lesser included offense of Reckless Endangerment in Count One, he could no longer be subject to Arson in the First Degree as identified in Counts Two and Three.

Although petitioner attempts to characterize Counts One, Two, and Three as separate charges of the same crime, it is clear from

the four corners of the indictment that these were simply three different **theories** of Arson in the First Degree arising out of the same criminal episode. See Respondent's Exhibit 124, Att. 1-2. The different theories stem from the language in Oregon's Arson statute:

> (1) A person commits the crime of arson in the first degree if, by starting a fire or causing an explosion, the person intentionally damages:
>
>     (a) Protected property of another;
>
>     (b) Any property, whether the property of the person or the property of another person, and such act recklessly places another person in danger of physical injury or protected property of another in danger of damage.

ORS 164.325.

In petitioner's case, Count One related to ORS 164.325(a). Counts Two and Three related to the alternative theories set forth in ORS 164.325(b). The trial judge explained these theories accurately in response to a due process claim petitioner raised to the trial court regarding the consistency of the jury's verdict:

> In Count 1, what makes it different is damaging protected property, in this case a dwelling. In Count 2, it's dwelling and contents. So they didn't have to find the floor was burned, the bedding would have been sufficient there, but they had to find additionally that it recklessly placed protected property in danger of damage, not actually having been damaged, that protected property being, you know, the motel or the room, the dwelling. In other words, it wasn't actually damaged, but it was in danger of being damaged. And that would get you to Count 2, but you can find that, and having found it wasn't actually damaged, you wouldn't find him guilty of Count 1, even with the same mental state. And in Count 3, you have the additional element of recklessly placing another person or persons in danger of physical injury.

So, you could find that there was damage to the contents, although not the dwelling, and that other -- another person or persons were recklessly placed in danger of physical injury, and make a finding of guilt on Count 3. I'm not following why those are inconsistent when you look at all of the elements.

Respondent's Exhibit 104, pp. 427-28.

While petitioner was not properly subject to separate punishments based on the different theories set forth in Counts One, Two, and Three, the Oregon Court of Appeals corrected this problem when it ordered that all counts be merged and remanded the case for resentencing. <u>See</u> Respondent's Exhibit 111. Because Counts One, Two, and Three were ultimately merged and resulted in a single sentence, petitioner's indictment was not multiplicitous. Accordingly, upon an independent review of the record, the state court decisions denying relief on this claim are neither contrary to, nor unreasonable applications of, clearly established federal law.

2.   <u>Ground Two: Right to Jury Trial</u>.

Petitioner alleges that his Sixth Amendment right to a jury trial was violated when the judge imposed an upward departure sentence without having a jury establish the requisite aggravating facts. Petitioner's claim is based on <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000) and <u>Blakely v. Washington</u>, 542 U.S. 296 (2004). In <u>Apprendi</u>, the Supreme Court held that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury,

12 - OPINION AND ORDER

and proved beyond a reasonable doubt." 530 U.S. at 490. In
Blakely, the Supreme Court reiterated Apprendi's holding and made it
clear that "the 'statutory maximum' for Apprendi purposes is the
maximum sentence a judge may impose *solely on the basis of the facts
reflected in the jury verdict or admitted by the defendant*." 542
U.S. at 303 (citation omitted) (emphasis in original).

In petitioner's case, the presumptive sentencing range for
Arson in the First Degree was 116-120 months. Respondent's Exhibit
103, pp. 380-81. During his original sentencing, the judge
concluded that because petitioner was on supervision at the time of
the offense, a departure to 240 months was appropriate on both
counts. Id at 376. With respect to Count Two, she also concluded
that petitioner suffered from a severe personality disorder
indicating a propensity toward crimes that seriously endanger the
life or safety of another. She therefore concluded that pursuant to
ORS 161.725, petitioner was a Dangerous Offender and sentenced him
to 360 months on Count Three. Id at 381-82.

When the Oregon Court of Appeals ordered the merger of all
three counts and remanded the case for resentencing, the judge again
found "substantial and compelling reasons for a departure" sentence.
Respondent's Exhibit 105, p. 41. She noted that a departure
sentence would be warranted either because: (1) petitioner was on
probation at the time of the offense; or (2) he met the criteria for
a Dangerous Offender sentence. The judge recognized, however, that

Apprendi would not allow her to impose a 30-year Dangerous Offender sentence in the absence of a jury, and therefore capped petitioner's sentence at 20 years because "[t]hat is within the statutory maximum which [petitioner] was subject [to] for the Arson conviction regardless of any dangerous offender finding." Id at 43.

The question this court must resolve is whether the trial judge's departure sentence based on petitioner's probationary status at the time of the instant offense violated petitioner's Sixth Amendment right to a jury trial. Petitioner contends that the factual determination that he was on probationary supervision at the time of the offense is a factual determination that involves more than the existence of prior conviction. Petitioner also argues that he was not on probation at the time of his offense.

A thorough review of the presentence report cited by both parties reveals that petitioner was placed on post-prison supervision on July 16, 1998 after serving a six-month sentence for Possession of a Controlled Substance. Respondent's Exhibit 141, p. 5. The term of that supervision did not expire until August 19, 1999, well after the offense at issue in this case was committed on March 7, 1999. Id at 4; Petitioner's Exhibit E. The presentence report specifically identifies as an aggravating factor that "[t]he defendant was under parole or probation supervision at the time the current offense was committed." Respondent's Exhibit 141, p. 13. Moreover, petitioner never objected when the trial judge cited his

14 - OPINION AND ORDER

probationary status as an aggravating factor during his resentencing.  See Respondent's Exhibit 105.

The court must still consider whether the departure factor based on petitioner's probationary status should have been proven to a jury beyond a reasonable doubt before a departure sentence was imposed.  Respondent argues that if a jury were given an opportunity to impose a departure sentence, it would have done so because it is clear that petitioner was on supervision at the time of his offense. According to respondent, petitioner's supervisory status, by itself, would have justified a departure sentence under Oregon law, and this departure factor arises directly out of the one exception explicitly recognized by both Blakely and Apprendi: the fact of a prior conviction.

Oregon's departure factor based on a criminal defendant's probationary status requires more than a simple finding that the defendant was on supervision at the time he committed his offense. The Oregon Court of Appeals has directly addressed what aggravating factors must be proven before this particular departure factor may be utilized:

> In sum, the state is incorrect that our prior case law leaves open to reasonable dispute whether a defendant's supervision status is -- "by itself and as a matter of law," as the state puts it -- sufficient grounds for imposition of a departure sentence.  All of our prior case law concerning that departure factor supports our conclusion that a departure based on it is warranted only if the factfinder can draw an inference as to the "malevolent quality of the offender and the failure of his parole status to serve as an effective deterrent."

15 - OPINION AND ORDER

> Because defendant's admission [that he was on parole at
> the time of his offense] did not encompass such an
> inference, his sentence cannot be upheld.

State v. Allen, 202 Or.App. 565, 570, 123 P.3d 331 (2005).

Based on Oregon's own interpretation of this particular
departure factor, the trial judge was required to submit to a jury
the factors necessary to depart upwardly beyond 120 months. Indeed,
the Oregon Court of Appeals has routinely concluded that, in the
absence of proof to a factfinder beyond a reasonable doubt, the
imposition of a departure sentence based on a defendant's
probationary status is so plainly erroneous in the wake of Blakely
that the issue need not even be preserved for appellate review.[3] See
State v. Jackson, 204 Or.App. 107, 129 P.3d 202 (2006); State v.
Jenkins, 199 Or.App. 384, 111 P.3d 782 (2005); State v. Allen, 198
Or.App. 392, 395-96, 108 P.3d 651 (2005). Although respondent asks
the court to assume that a jury would have found the facts necessary
to support a departure sentence in this case, the court is unwilling
to do so.

Upon an independent review of the record, because a jury did
not find the aggravating facts necessary to support the imposition
of a departure sentence in petitioner's case, it was an unreasonable
application of Apprendi and Blakely for the Oregon state courts to

_____

[3]  It is noteworthy that the determinate sentencing scheme
used by Oregon's state courts compels this conclusion, whereas this
departure may well be constitutional in a federal criminal action
given the advisory nature of the Sentencing Guidelines. See U.S.
v. Booker, 543 U.S. 220, 245-46 (2005).

impose and affirm the imposition of such a sentence.  The Petition for Writ of Habeas Corpus is therefore granted as to petitioner's Ground Two claim.

### CONCLUSION

For the reasons identified above, the Petition for Writ of Habeas Corpus (#2) is GRANTED.  Within ten (10) days from the date of this Opinion, petitioner shall submit a proposed form of judgment.  Respondent shall have ten (10) days thereafter to respond to petitioner's proposed form of judgment, and propose an alternative form of judgment for the court's consideration should he wish to do so.

IT IS SO ORDERED.

DATED this   30th    day of April, 2007.


 /s/ Michael W Mosman
        Michael W. Mosman
        United States District Judge

17 - OPINION AND ORDER